O

# United States District Court
# Central District of California

ROBERT CORREA et al.,

    Plaintiffs,

    v.

SOHO HOUSE AND CO. et al.,

    Defendants.

Case № 2:24-cv-04354-ODW (MAAx)

**ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND DEFENDANTS' MOTION TO COMPEL ARBITRATION [9] [10]**

## I.    INTRODUCTION

Plaintiffs Robert Correa and Kevin Ricardo Vasquez filed this putative class action in the Superior Court of the State of California against Defendants Soho House & Company ("SHCO"), Soho House, LLC, Soho House West Hollywood, LLC, and LA 1000 Santa Fe, LLC (collectively, "Soho House Clubs" or "Defendants"). (Notice Removal ("NOR") Ex. B ("First Am. Compl." or "FAC"), ECF No. 1-2.) Soho House Clubs removed the case on the grounds that the Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (NOR ¶ 1, ECF No. 1.)

Plaintiffs move to remand. (Mem. ISO Mot. Remand ("Mot. Remand"), ECF No. 9-1.) Soho House Clubs, in turn, move to compel arbitration. (Mem. ISO Mot. Compel ("Mot. Compel"), ECF No. 10-1.) The Court **DENIES** both motions.[1]

## II. BACKGROUND

Soho House Clubs own and operate high-end dining and drinking establishments in Los Angeles County. (FAC ¶¶ 1–5.) Correa and Vasquez are former non-exempt employees of Soho House Clubs. (*Id.* ¶ 7.) Correa and Vasquez allege that, during their employment, they "regularly worked shifts that lasted more than four hours without any rest periods." (*Id.* ¶ 8.) Soho House Clubs failed to pay premium wages on days when Correa and Vasquez were entitled to, but unable to take, rest periods. (*Id.* ¶ 9.) As a result of the missed premium wages, Soho House Clubs provided Correa and Vasquez with inaccurate wage statements. (*Id.* ¶ 10.) Soho House Clubs also failed to pay Correa and Vasquez the amount due at the end of their employment and failed to reimburse them for "work-related expenses." (*Id.* ¶¶ 11–12.)

On March 5, 2024, Correa and Vasquez filed a class action complaint against Soho House Clubs in state court. (NOR ¶ 3.) Correa and Vasquez assert causes of action against Soho House Clubs for (1) failure to provide rest periods; (2) failure to provide accurate wage statements; (3) failure to reimburse work-related expenses; (4) California's Business & Professions Code violations; and (5) Private Attorneys General Act. ("PAGA") violations. (FAC ¶¶ 21–42.)

Soho House Clubs removed the case to federal court under CAFA. (NOR ¶ 1.) Correa and Vasquez now move to remand and Soho House Clubs move to compel arbitration. (*See* Mot. Remand; Mot. Compel.) Both Motions are fully briefed. (Opp'n Mot. Remand, ECF No. 11; Reply ISO Mot. Remand, ECF No. 13; Opp'n Mot. Compel, ECF No. 14; Reply ISO Mot. Compel ("Reply Compel"), ECF No. 15.)

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

### III. MOTION TO REMAND

As the Court must have subject-matter jurisdiction to consider the Motion to Compel Arbitration, the Court first considers Plaintiffs' Motion to Remand.

**A. Legal Standard**

A lawsuit filed in state court may be removed to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). CAFA provides federal courts with jurisdiction over a purported class action if all the following requirements are met: (1) the putative class has at least 100 members; (2) at least one putative class member is a citizen of a state different from any defendant; and (3) the amount in controversy exceeds $5,000,000. *Id.* §§ 1332(d)(2), (5).

A defendant seeking to remove a case must file in the district court a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A short and plain statement "need not contain evidentiary submissions." *Dart Cherokee Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). The removing defendant bears the burden of establishing federal jurisdiction. *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006). Unlike cases removed under diversity jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89.

If removal is challenged, the defendant's evidentiary burden to establish CAFA jurisdiction depends on whether a plaintiff mounts a "facial" or "factual" attack on the jurisdictional allegations found in the notice of removal. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020).

"A 'facial' attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)) (cleaned up). When a plaintiff mounts a facial attack, the burden falls on the defendant "to plausibly show that it is reasonably possible" that the CAFA jurisdictional requirements are satisfied. *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1136 (N.D. Cal. 2020) (quoting

*Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020)); *see also Leite*, 749 F.3d at 1121 ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6) . . . .").

"A factual attack, by contrast, 'contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings.'" *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Leite*, 749 F.3d at 1121). When a plaintiff mounts a factual attack, a defendant must show "by a preponderance of the evidence" that the CAFA jurisdictional requirements are satisfied. *Id.* at 963 (quoting *Dart Cherokee*, 574 U.S. at 88).

**B.  Discussion**

Plaintiffs argue removal is improper because Soho House Clubs offer no evidence to support their allegations found in the notice of removal. (Mot Remand. 3–6.) Plaintiffs further assert that even if removal is proper, the home state exception applies. (*Id.* at 6–7.) Soho House Clubs disagree and argue removal is proper because the Court has subject matter jurisdiction under 28 U.S.C. § 1332 and the home state exception is inapplicable. (Opp'n Mot. Remand 4–8.)

*1.  Type of Jurisdictional Challenge*

Plaintiffs' entire argument against CAFA jurisdiction, as established in their Motion to Remand, can be distilled into three statements: (1) Soho House Clubs offer "no evidence that the class size is 'at least 757'"; (2) Soho House Clubs offer "no evidence of its citizenship"; and (3) Soho House Clubs offer "no evidence of the $5,000,000" jurisdictional threshold. (*See* Mot. Remand 3–6.) Nowhere do Plaintiffs "assert that [Soho House Clubs] misinterpreted the thrust of [their] complaint," or "offer any declaration or evidence that challenge[s] the factual bases of [Soho House Clubs'] plausible allegations." *Harris*, 980 F.3d at 699 (quoting *Salter*, 974 F.3d at 964). Declaring that Soho House Clubs' alleged class size is a "seemingly inflated number," (Mot. Remand 4), is not a "reasoned argument as to why any assumptions on which [Soho House Clubs' jurisdictional allegations] are based are not supported

by evidence." *Harris*, 980 F.3d at 700. Accordingly, Plaintiffs' "no evidence" argument amounts to a facial attack on Soho House Clubs' jurisdictional allegations in the notice of removal. *See e.g. Tapia v. Nat'l Dentex Labs LLC*, No. 2:23-cv-09933-JFW (PVCx), 2024 WL 262862, at *2 (C.D. Cal. Jan. 24, 2024) (finding plaintiff's argument that "[d]efendant did not submit sufficient proof supporting its calculations of the amount in controversy . . . constitutes a facial attack.").

As Plaintiffs mount a facial attack, the Court applies the lower "plausibility" standard to Soho House Clubs' allegations—accepting as true well-pleaded allegations and drawing all reasonable inferences in Soho House Clubs' favor. *See Salter*, 974 F.3d at 964; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2. Class Size

Soho House Clubs must first plausibly allege that the putative class contains at least 100 members. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).

In their Complaint, Plaintiffs define a putative class consisting of "any and all persons who have been employed by Defendants as non-exempt employees in California at any time within the four-year statute of limitations period." (FAC ¶ 13.) Plaintiffs notably assert that "there are approximately 100 Class members." (*Id*. ¶ 16.) Based on these allegations, Soho House Clubs allege that "from March 5, 2020, through the present . . . Defendants employed at least 757 individuals in California as non-exempt employees." (NOR ¶ 21.) The Court finds Soho House Clubs plausibly allege there are at least 100 class members based on reasonable inferences drawn from Plaintiffs' Complaint and factual content from Soho House Clubs' own records. (*See* Decl. Terence Heflin-Connolly ISO Opp'n Mot. Remand ("Heflin-Connolly Opp'n Decl.") ¶ 8, ECF No. 11-1.)

### 3. Minimal Diversity

"If any one class member has different state citizenship than any one defendant, minimal diversity is satisfied under CAFA." *Brown v. Janus of Santa Cruz*, No. 21-

cv-00094-BLF, 2021 WL 3413349, at *4 (N.D. Cal. Aug. 5, 2021) (citing 28 U.S.C. § 1332(d)(2)(A)). Absent a factual challenge, "a defendant's allegation of citizenship may be based solely on information and belief." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

Soho House Clubs allege, based on information and belief, that Plaintiffs "are residents and citizens of California." (NOR ¶¶ 14–15.) Defendant SHCO is a citizen of Delaware and New York based on its place of incorporation and principal place of business. (*Id* ¶ 16.) These allegations plausibly establish minimal diversity because Soho House Clubs plead "factual content that allows the court to draw the reasonable inference" that Plaintiffs hold California citizenship and at least one Defendant holds non-California citizenship. *Iqbal*, 556 U.S at 678; *see also Ehrman*, 932 F.3d at 1226–27 (finding defendants' citizenship allegations sufficient to overcome a facial challenge when based on information and belief).

4.     *Amount in Controversy*

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [a] defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). When analyzing a defendant's allegations, the court "need not perform detailed mathematical calculations to determine whether the defendant has established the jurisdictional amount." *Anderson*, 556 F. Supp. 3d at 1136. A defendant "may rely on reasonable assumptions to prove that it has met the statutory threshold and on a chain of reasoning that includes assumptions based on reasonable grounds." *Id.* at 1136–37 (internal quotations and citation omitted). "Reasonable grounds include the allegations in the complaint, as well as extrinsic evidence proffered by the defendant." *Id.* at 1137.

As discussed above, Soho House Clubs must make a plausible showing that their potential liability exceeds $5 million. *Greene*, 965 F.3d at 772. When, as in this instance, Plaintiffs do not allege an amount in controversy in their Complaint, the

Court looks to the allegations in the notice of removal. *See Lewis*, 627 F.3d at 397 (holding that the party seeking removal bears the burden of showing that the amount in controversy exceeds $5,000,000 when the complaint does not contain any specific amount of damages). In their Notice of Removal, Soho House Clubs allege that the amount in controversy falls between $6,268,263 and $7,018,893, exceeding the $5,000,000 jurisdictional threshold. (NOR ¶¶ 34–35.) The Court analyzes each damage calculation in turn.

### a. Rest Breaks

Soho House Clubs estimate that potential liability for failing to provide rest breaks falls between $1,501,260 and $2,101,764, "calculated as: $20.45 applicable hourly rate × 293,645 shifts × [25% - 35% violation rate]." (*Id.* ¶ 26.)

This calculation is based on reasonable inferences using hourly rates and shift amounts provided by Defendant SHCO's Regional People Director—The Americas. (*See* Heflin-Connolly Opp'n Decl. ¶¶ 8–9.) The violation rate range is also reasonable based on Plaintiffs' allegation in their Complaint that "non-exempt employees of Defendants in California regularly worked shifts that lasted more than four hours without any rest periods." (FAC ¶ 8.) Allegations that violations were "regularly occurring" support a pattern and practice of such violations. *Garcia v. William Scotsman, Inc.*, No. 2:24-cv-02977-MWF (SPx), 2024 WL 4289895, at *5 (C.D. Cal. Sep. 25, 2024). Courts have generally found a violation rate of 25% to 35%, like the one applied here, reasonable for pattern and practice allegations. *See id.*; *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (accepting a 30% violation rate for a rest period claim based on pattern and practice allegations); *Kincaid v. Educ. Credit Mgmt. Corp.*, No 2:21-cv-00863-TLN-JDP, 2022 WL 597158, at *4 (E.D. Cal. Feb. 28, 2022) (finding a 20% to 60% violation rate for meal period and rest period violations reasonable based on pattern and practice allegations).

Accordingly, because Soho House Clubs' factual allegations are plausible and the violation rate range is appropriate, Court finds Soho House Clubs' rest break calculation to be reasonable.

### b. Waiting Time

Soho House Clubs estimate that their potential liability for waiting time penalties is $2,275,000, "calculated as: 474 separated employees × 8 hours × 30 days × $20 average hourly rate of pay." (NOR ¶ 29.)

The Court does not take issue with Soho House Clubs' factual allegations used in their calculation: (1) 474 individuals were separated from employment during the applicable three-year period and (2) the average hourly rate of pay was $20. (NOR ¶ 29; Heflin-Connolly Opp'n Decl. ¶ 10.) Soho House Clubs' use of "30 days" in their calculation, (NOR ¶¶ 28–29), is also reasonably supported by Plaintiffs' allegation that they are still owed premium wages for the missed rest periods. (FAC ¶ 24); *see also Ramos v. Schenker, Inc.*, No. 5:18-cv-01551-JLS (KK), at *2, 2018 WL 5779978 (C.D. Cal. Nov. 1, 2018) ("Plaintiff's allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties.")

The Court, however, finds that Soho House Clubs' reliance on "8 hours" in their calculation is not reasonable. (NOR ¶ 29.) Plaintiffs allege Soho House Clubs regularly failed to provide rest periods for shifts between 3.5 to 6.0 hours and 6.0 to 10.0 hours. (FAC ¶ 22.). The Court is unconvinced that the use of 8 hours is reasonable in light of Plaintiffs' allegations. *See LaCross v. Knight Transp. Inc.*, 755 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint."). Staying within Soho House Clubs' "conservative" estimates, (NOR ¶¶ 24, 26, 33–34), the Court finds that the use of 6 hours is more reasonable, as this length is found within both alleged ranges. (*See* FAC ¶ 22.)

Accordingly, the Court finds that $1,706,400[2] is a more appropriate representation of the potential liability for waiting time penalties.

### c. Wage Statement

Soho House Clubs estimate that their potential liability for wage statement penalties is $1,238,350, "calculated as: [$50 penalty for each initial violation × 337 pay periods] + [$100 penalty for each subsequent violation × 17,780 pay periods] and capped at $4,000 per individual." (NOR ¶ 30.)

This calculation is reasonably supported by Soho House Clubs' personnel data showing that they (1) employed at least 337 individuals in California during the applicable one-year period and (2) the 337 individuals worked approximately 18,117 pay periods. (NOR ¶ 30; Heflin-Connolly Opp'n Decl. ¶ 11). The penalty amounts are also appropriate because an employee may recover up to $50 for the violation in the initial pay period and $100 for each violation in subsequent pay periods, not to exceed $4,000 in aggregate. *See* California Lab. Code § 226(e)(1)

Accordingly, because Soho House Clubs' factual allegations are plausible and appropriately reflect the amounts permitted under California Labor Code section 226(e)(1), the Court finds the wage statement penalties calculation is reasonable.

### d. Total Amount in Controversy

After adjusting Soho House Clubs' calculation for waiting time penalties, the total amount in controversy is $5,046,514.[3] Accordingly, as Soho House Clubs sufficiently plead the amount in controversy exceeds the $5,000,000 jurisdictional threshold, the Court need not and declines to reach Soho Houses Clubs' proposed attorneys' fees calculations.

---

[2] Calculated as 474 separated employees × 6 hours × 30 days × $20 average hourly rate of pay.
[3] Calculation applying a 35% violation rate: ($2,101,764 + $1,706,400 + $1,238,350) = $5,046,514. This calculation does not include attorneys' fees.

### 5. *CAFA Jurisdiction Conclusion*

Soho House Clubs plausibly show that (1) the putative class contains at least 100 members; (2) at least one plaintiff is diverse in citizenship from any one defendant (i.e., minimal diversity); and (3) the aggregate amount in controversy is greater than $5,000,000. Thus, the Court finds that Soho House Clubs sufficiently plead the CAFA jurisdictional requirements.

### 6. *Home State Exception*

"Once CAFA jurisdiction [is] established," as it is here, "the burden falls on the party seeking remand . . . to show that an exception to CAFA jurisdiction applies." *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020) (internal citation omitted). Here, Plaintiffs assert that the home state exception may apply to CAFA jurisdiction. (Mot. 6–7.)

"The home state exception accords two bases for remand: one mandatory and the other within the district court's discretion." *Adams*, 958 F.3d at 1220. However, under both the mandatory and discretionary bases, the primary defendants must be citizens of the state where the action was originally filed for the exception to apply. *See id.* Accordingly, the Court need only determine, under a preponderance of the evidence standard, whether the primary defendants in this case are not citizens of California. *See id.* at 1221.

#### a. Judicial Notice

Plaintiffs request the opportunity to conduct discovery to meet their evidentiary burden to establish the citizenship of the primary defendants. (Mot. 7; *see also* Reply 4–5.) Soho House Clubs, in turn, ask the Court to take judicial notice of various facts and exhibits proffered in *Danielle C. Deras v. Soho House LLC et al.*, No. 2:24-cv-03428-AB (SSCx) (C.D. Cal. filed Apr. 25, 2024): (1) one Minute Order regarding various motions (Ex. A); (2) the Declaration of Philip Spee (Ex. B); and (3) an Opposition Memorandum (Ex. C). (Defs.' Req. Judicial Notice ("DRJN"), ECF No. 12.) In particular, the Declaration of Philip Spee, who is Defendant SHCO's

Regional Director of Operations–West Coast, contains information about the primary defendants' citizenship. (DRJN Ex. B ("Spee Decl."), ECF No. 12-1.)

A court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). "A fact is not subject to reasonable dispute if it is generally known, or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal quotation marks omitted). "A court must also consider—and identify—which fact or facts it is noticing from such a transcript." *Id.* "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* Further, "[a] court may not take judicial notice of a *fact* that is subject to 'reasonable dispute' simply because it is contained within a pleading that has been filed as a public record or is asserted in another document which otherwise is properly the subject of judicial notice." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1077 (C.D. Cal. 2009).

Here, Plaintiffs do not directly dispute the facts found in the Spee Declaration. Rather, it appears that Plaintiffs hope to prove Spee wrong *after* they conduct discovery. The Court is skeptical that Plaintiffs can raise a reasonable dispute as to the primary defendants' citizenship because (1) it is unreasonable to believe that Spee fabricated information about the sole owner of two limited liability companies in a declaration that is signed under penalty of perjury and (2) Plaintiffs provide no facts to indicate that Spee's statements can be reasonably questioned. Accordingly, to the extent the Court relies on the submitted document, the Court **GRANTS** Soho House Clubs' RJN and takes judicial notice of Exhibit B—the Declaration of Philip Spee.[4] (Spee Decl.)

---

[4] The Court **DENIES** Defendants' RJN as to Exhibit A and Exhibit C because it does not "affect the outcome of this [M]otion". *See Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1004 n.1 (C.D. Cal. 2000); (DRJN Ex A, C.)

      b. <u>Home State Exception Analysis</u>

Soho House Clubs must establish, under a preponderance of evidence, that the primary defendants are not citizens of California. *See Adams*, 958 F.3d at 1221. Here, Plaintiffs assert that the primary defendants are Soho House West Hollywood, LLC and LA 1000 Santa Fe, LLC ("Primary Defendants"). (Mot. 7.) As limited liability companies, the citizenship of Primary Defendants' owners or members determines their citizenship. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("[A]n LLC is a citizen of every state of which its owners/members are citizens.").

Primary Defendants are both limited liability companies with Soho House, LLC as the sole owner. (Spee Decl. ¶ 3; NOR ¶ 20.) Soho House, LLC's sole member is Soho House U.S. Corporation. (Spee Decl. ¶ 3.) Soho House U.S. is incorporated in the State of Delaware with its principal place of business in New York. (*Id.*) Accordingly, Soho House U.S. Corporation is a citizen of Delaware and New York. *See* 28 U.S.C § 1332(c). Following the chain of sole ownership established above, Primary Defendants are Delaware and New York citizens for purposes of diversity. Accordingly, Plaintiffs' assertion that the home state exception may apply fails because Primary Defendants hold non-California citizenship.

Because Soho House Clubs have sufficiently shown that Primary Defendants are not California citizens by a preponderance of the evidence, the home state exception does not apply.

### IV. MOTION TO COMPEL

The Court, having determined it has subject matter jurisdiction, turns to Soho House Clubs' Motion to Compel Arbitration.

### A. Legal Standard

In deciding whether to compel arbitration, the Federal Arbitration Act ("FAA")[5] generally limits a court's inquiry to "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "A defendant may meet its 'initial burden to show an agreement to arbitrate' merely 'by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature' to the motion to compel arbitration." *Medina v. Circle K Stores, Inc.*, No. 5:22-cv-00557-JGB (DTBx), 2024 WL 1601246, at * 4 (C.D. Cal. Jan. 2, 2024).

### B. Discussion

Soho House Clubs fail at the outset by providing the Court with incomplete copies of the arbitration agreement. Soho House Clubs submit two reproductions of the Dispute Resolution Agreement ("DRA"). (Decl. Terence Heflin-Connolly ISO Mot. Compel ("Heflin-Connolly Mot. Decl.") Ex. A ("Correa DRA"), ECF No. 10-4; Decl. Terence Heflin-Connolly ISO Reply Compel ("Heflin-Connolly Reply Decl.") Ex. F ("Vasquez DRA"), ECF No. 15-2.) Each reproduction appears to be a series of webpage screenshots or prints, cobbled together to create the twenty-page DRA. Consequently, each page reflects sentences that are cut-off at the top and bottom of the page, and web interface menus that block material portions of the contractual language. (*See generally* Correa DRA; Vasquez DRA.) The hyperlink to the digital copy of the DRA is either incomplete or invalid. (*See generally* Correa DRA (invalid hyperlink in footer); Vasquez DRA (invalid hyperlink in footer); Heflin-Connolly Mot. Decl. Ex. C, ECF No. 10-4 (incomplete hyperlink); Heflin-Connolly Reply Decl. Ex. G, ECF No. 15-2 (invalid hyperlink).) As such, Soho House Clubs do not provide

---

[5] Soho House Clubs claim the arbitration agreement in this case is governed by the FAA. (Mot. Compel 4; Reply Compel 1.) Plaintiffs do not dispute this. (*See generally* Opp'n Mot. Compel.)

the Court with a complete copy of either DRA, thus preventing the Court's requisite review.

A complete copy of the arbitration agreement is essential where, as here, the language of the agreement informs the Court's analysis. *See e.g. Kingsburg Apple Packers, Inc. v. Ballantine Produce Co., Inc.*, No. 1:09-cv-00901 AWI JLT, 2012 WL 718853, at *3 (E.D. Cal. Mar. 5, 2012) (looking first to the plain language of the agreement to determine whether an arbitration agreement covers specific claims). For example, the parties dispute whether the DRA covers Plaintiffs' wage and hour claims and whether Plaintiffs waived their rights to bring Class Action and PAGA claims. (Mot. Compel 8–12; Opp'n Mot. Compel 9–10.) However, the "Claims Covered Under the DRA" provision in the DRA is incomplete because sentences are missing, and certain words are covered by website interface menus. (*See* Correa DRA 3–4[6]; Vasquez DRA 3–4[7].) The "Mutual Promise" provision following the "Scope of the Class Action Waiver" section is also incomplete such that the Court cannot ascertain the parties' promise regarding class action claims. (*See* Correa DRA 4–5; Vasquez DRA 4–5.) Moreover, in their argument against substantive unconscionability, Soho House Clubs state that the DRA's severability provision "delegated to the arbitrator the power to sever any unenforceable provision from the [DRA]." (Reply Compel 6–7.) However, the entire "Severability" provision is obscured and effectively absent from the copies of the DRA submitted to the Court. (*See* Correa DRA 6–7; Vasquez DRA 6–7.) Accordingly, the Court cannot determine the DRA's scope and enforceability because material portions of "the plain language of the agreement" are missing or obscured. *Kingsburg Apple Packers*, 2012 WL 718853, at *3; *Brennan*, 796 F.3d at 1130.

---

[6] The Court cites to the page number reflected at the bottom right corner of the DRA.
[7] The Court cites to the page number reflected at the bottom right corner of the DRA.

As essential terms of the DRA are missing, obscured, or incomplete, the Court cannot determine whether Plaintiffs' claims fall within the scope of the arbitration agreement or whether any terms render the agreement unenforceable. The Court thus denies Soho House Clubs' Motion to Compel.

## V.  CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiffs' Motion to Remand, (ECF No. 9), and Soho House Clubs' Motion to Compel Arbitration, (ECF No. 10).

**IT IS SO ORDERED.**

November 27, 2024

                                              **OTIS D. WRIGHT, II**
                                    **UNITED STATES DISTRICT JUDGE**